**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

ORLANDO JONES,

           Plaintiff,

     v.

DAVID J. SHULKIN, M.D., [1]
Secretary,
Department of Veterans Affairs,

         Defendant.

_____

)
)
)
)
)
) Civil Action No. 15-01384 (CRC)
)
)
)
)
)
)
)
)
)

## **DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to Rules 12(b)(1) and 56 of the Federal Rules of Civil Procedure, Defendant respectfully submits this Motion to Dismiss or, in the Alternative, for Summary Judgment.

Plaintiff is a disabled African-American male with prior protected activity. Complaint at ¶¶ 13-14, 16. At all times pertinent to his complaint, Plaintiff worked as a GS-14 Lead Program Specialist in the Department of Veterans Affairs Office of the Assistant Secretary for Human Resources and Administration. Id. at ¶ 15. Specifically, Plaintiff was assigned to the Department of Veterans Affairs Learning University (VALU). Id. at ¶ 9. Plaintiff alleges discrimination based on disability, race, gender, and retaliation, pursuant to Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*[2], and Title VII of the Civil Rights Act of

_____

[1] Pursuant to Federal Rule of Civil Procedure 25(d), David J. Shulkin, M.D. has been substituted for Robert McDonald as the Defendant in this case.

[2] Plaintiff cites Title I of the Americans with Disabilities Act, 42 U.S.C. 12101, *et seq*., as the authority for his disability complaint. However, Section 501 of the Rehabilitation Act, codified

1964 as amended, 42 U.S.C. § 2000e *et seq*. at §§ 2000e-2 and  §§ 2000e-3 *et seq*., (Title VII).[3]

Id. at ¶ 1a-d.

Plaintiff alleges Defendant discriminated and retaliated against him, as well as subjected him to a hostile work environment because of his disability, race, gender, and prior protected activity when:

- On May 4, 2012, Alice Muellerweiss (AM), Dean of VA Learning University (VALU), "poked fun" at Plaintiff and spoke about him in a "condescending manner" during an employee's farewell ceremony.

- On May 4, 2012, July 23, 2012, and July 24, 2012, Plaintiff became aware that management officials removed "key members" of his team and reassigned them, without involving him in the decision.

- On May 7, 2012, Dr. Reginald Vance (Dr. RV), Acting Supervisory Management Analyst, yelled at and pointed his finger in Plaintiff's face.

- On June 16, 2012, Plaintiff was informed by a peer that Dr. Arthur McMahan, Deputy Dean, called Plaintiff a 'smart ass' and 'a know it all,' and stated that he did not like him.

- On August 2, 2012, Zelda Davis, Supervisor, approached Plaintiff in an intimidating and hostile manner, wherein she pointed her finger in his face and used expletives.

- On August 30, 2012, and September 24, 2012, Ms. Christopher Burroughs, Director, Policy Plans and Resources, failed to approve and grant Plaintiff's compensatory time earned during the period of August 24-August 29, 2012.

---

at 29 U.S.C. § 791, provides the exclusive remedy for federal employees alleging that federal agencies engaged in disability discrimination.

[3] Plaintiff has withdrawn claims brought under Title VII and the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. § 621 *et seq*., alleging unlawful discrimination based on his age and national origin.

- On September 4, 2012, Ms. Burroughs displayed an intimidating manner towards Plaintiff when she criticized his work efforts, and issued Plaintiff a ''letter of concern.''

- On September 21, 2012, Ms. Burroughs investigated an incident that occurred on September 2, 2012, that was allegedly biased and portrayed Plaintiff in an unfavorable manner.

- During the period of June 1, 2012, through September 25, 2012, Ms. Burroughs denied approval of sick leave requested by Plaintiff.

- During the weeks of September 24, 2012, and September 27, 2012, ongoing, Ms. Burroughs copied Zelda Davis on correspondence that contained privileged information and personal communications.

- On October 22, 2012, Ms. Burroughs issued Plaintiff a letter of reprimand for inappropriate conduct on August 2, 2012, and September 27, 2012.

- On November 26, 2012, Ms. Burroughs issued Plaintiff written notice, regarding his failure to properly request leave in advance from his supervisor.

- On November 29, 2012, Plaintiff reported Ms. Burroughs required him to return to the facility to enter his leave request into IFCAP, and as a result, he incurred an excessive trip of sixty-four miles to do so.

Id. at ¶¶ 2, 24-25, 27, 29, 31-32, 35-49.

As set forth in the Memorandum of Points and Authorities in support of this motion, Plaintiff failed to exhaust his administrative remedies regarding his disability claims. Consequently, Defendant is entitled to dismissal of all claims based on unlawful disability discrimination, including Plaintiff's reasonable accommodation claims. Additionally, and alternatively, Defendant contends there are no material facts in genuine dispute and Defendant is entitled to judgment as a matter of law with respect to all claims.

Respectfully submitted,


CHANNING D. PHILLIPS, D.C. Bar No. 415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division

By:      /s/   *Wyneva Johnson*
WYNEVA JOHNSON, D.C. Bar No. 278515
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2518
Wyneva.johnson@usdoj.gov



*Of Counsel:*
Darryl Joe
Attorney
Office of General Counsel
Department of Veterans Affairs

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ORLANDO JONES, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action No. 15-01384 (CRC) |
| v. | ) |
| | ) |
| DAVID J. SHULKIN, M.D., | ) |
| Secretary, | ) |
| U.S. Department of Veterans Affairs, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Civil Rule 7(h), Defendant hereby submits his statement of material facts as to which there is no genuine dispute and which entitle Defendant to dismissal of Plaintiff's disability discrimination claims brought under the Americans with Disabilities Act[1], as well as judgment as a matter of law with respect to Plaintiff's claims, including hostile work environment and retaliation.

**BACKGROUND**

1. During all times pertinent to this case, Plaintiff (disabled, male, African American, prior protected activity) was a GS-14 Lead Program Specialist in the Department of Veterans Affairs Learning University (VALU).  Complaint at ¶¶ 9, 13-16.

---

[1] Plaintiff cites Title I of the Americans with Disabilities Act, 42 U.S.C. 12101, *et seq.*, as the authority for his disability complaint.  However, Section 501 of the Rehabilitation Act, codified at 29 U.S.C. § 791, provides the exclusive remedy for federal employees alleging that federal agencies engaged in disability discrimination.

Specifically, Plaintiff worked in VALU's Office of Policy and Resource Management. Complaint at ¶ 38.

2.  Anita Wood formerly served as VALU'S Director for Policy and Resource Management and Plaintiff's supervisor until her departure on May 4, 2012.  ***Exhibit 1***, *Deposition of Anita Wood*, dated February 16, 2017 ("*Wood Depo*.") 6:3-22.

3.  Alice Muellerweiss (female, Caucasian), served as the Dean of VALU from December 2009 to January 2013.  ***Exhibit 2***, (Correction of Record) (identifying Ms. Muellerweiss as a "White Female."); ***Exhibit 3***, *Deposition of Alice Muellerweiss*, dated February 16, 2017 ("*Muellerweiss Depo*.") 5:8-14.

4.  Arthur McMahan, Ph.D. (male, African American), served as the Deputy Dean for VALU.  ***Exhibit 4***, *Interview of Arthur McMahan during EEO Investigation*, dated April 10, 2013 ("*McMahan Interview*") 6:7-8; 7:1-2.

5.  Reginald Vance, Ph.D. (male, Black), served as VALU's Division Director for Learning Infrastructure. ***Exhibit 5***, *Interview of Reginald Vance during EEO Investigation*, dated April 8, 2013 ("*Vance Interview*") 6:20-22; 7:17-18; ***Exhibit 6***, *Deposition of Reginald Vance, Ph.D.*, dated February 21, 2017 ("*Vance Depo*.") 7:7-9. Following Ms. Wood's departure in May 2012, Dr. Vance supervised the Office of Policy and Resource Management, on an interim basis, until a permanent Director was hired.  ***Exhibit 6***, *Vance Depo.* 11:14-25; 12:1-13.

6.  Zelda Davis (female, African American) served as VALU's Senior Human Resources Manager between 2011 and 2013.  ***Exhibit 7***, *Interview of Zelda Davis during EEO Investigation*, dated April 18, 2013 ("*Davis Interview*") 10:21-23; 11:4-5; ***Exhibit 8***, *Deposition of Zelda Davis*, dated February 16, 2017 ("*Davis Depo*.") 9:10-11.

7.   Christopher Burroughs (female, African American) served as VALU's Director for
Policy and Resource Management beginning July 2012.  ***Exhibit 9***, *Interview of
Christopher Burroughs during EEO Investigation*, dated April 18, 2013 ("*Burroughs
Interview*") 6:19-20; 7: 11-12.  When she assumed the position from Dr. Vance, Ms.
Burroughs became Plaintiff's first-level supervisor.  ***Exhibit 10***, *Deposition of
Christopher Burroughs*, dated February 21, 2017 ("*Burroughs Depo.*") 21:4-14

## THE PROCESSING OF PLAINTIFF'S EEO COMPLAINTS

### *Case Number 2004-0006-2012104057*

8.   On July 25, 2012, Plaintiff made initial contact with a counselor in the Defendant's
Office of Resolution Management.  ***Exhibit 11***, Counselor's Report (00050-51)
(reflecting Plaintiff's initial contact with the Office of Resolution Management on
July 25, 2012).  This contact resulted in case number 2004-0006-2012104057.  Id.

9.   At that time, Plaintiff alleged he was subjected to a hostile work environment because
of his gender, national origin, age, race, as well as retaliation for protected activity.
Id. at 00051.

10.  Plaintiff filed a formal complaint on September 15, 2012, wherein he alleged
discrimination and harassment based on his race, gender, age, national origin, and in
reprisal for protected activity.  ***Exhibit 12***, Formal Complaint of Discrimination
(00130-136).  On October 29, 2012, Defendant's Office of Resolution Management
notified Plaintiff of the acceptance of complaint number 2004-0006-2012104057,
which consisted of the following claims:

> Whether the complainant was subjected to a hostile work environment based on
> race (Black), sex (male), national origin (African American), age and reprisal for
> prior EEO activity as evidenced by the following events:

- On May 4, 2012, Alice Muellerweiss (AM), Dean of VA Learning University (VALU), "poked fun" at the complainant and spoke about him in a "condescending manner" during an employee's farewell ceremony.

- On May 4, 2012, July 23, 2012, and July 24, 2012, the complainant became aware that management officials removed "key members" of his team and reassigned them, without involving him in the decision.

- On May 7, 2012, Dr. Reginald Vance (Dr. RV), Acting Supervisory Management Analyst, yelled at and pointed his finger in the complainant's face.

- On June 16, 2012, the complainant was informed by a peer that Dr. Arthur McMahan (Dr. A. McM), Deputy Dean, called the complainant a 'smart ass' and 'a know it all,' and stated that he did not like him.

*Exhibit 13*, Notice of Acceptance of EEO Complaint (00197-00199)

### Case Number 2004-0006-2012104856

11.  On September 27, 2012, Plaintiff again initiated contact with the Office of Resolution Management to pursue a discrimination complaint.  *Exhibit 14*, EEO Counselor's Report (00108-109) (reflecting Plaintiff's initial contact with the Office of Resolution Management on September 27, 2012).  This contact resulted in case number 2004-0006-2012104856.  Id.

12.  At that time, Plaintiff alleged he was subjected to a hostile work environment because of his gender, age, race, and disability, as well as retaliation for protected activity.  Id. at 00109.

13.  Plaintiff filed a formal complaint in January 2013, wherein he alleged discrimination based on his gender, race, age, and reprisal for protected activity.  *Exhibit 15*, Formal Complaint of Discrimination  00141-142).  On February 15, 2013, Defendant's Office of Resolution Management notified Plaintiff of the acceptance of complaint number 2004-0006-2012104856, which consisted of the  following claims:

4

Whether complainant was subjected to a hostile work environment based on age, race (Black), sex (male), and reprisal (prior EEO activity) as evidenced by the following events:

- On August 2, 2012, Zelda Davis, Supervisor, approached the complainant in an intimidating and hostile manner, wherein she pointed her finger in his face and used expletives.

- On August 30, 2012, and September 24, 2012, Ms. Chris Burroughs, Director, Policy Plans and Resources, failed to approve and grant the complainant's compensatory (comp) time earned during the period of August 24-August 29, 2012.

- On September 4, 2012, Ms. Burroughs displayed an intimidating manner towards the complainant when she criticized his work efforts, issued complainant a "letter of concern."

- On September 21, 2012, Ms. Burroughs investigated an incident that occurred on September 2, 2012, that was allegedly biased and portrayed the complainant in an unfavorable manner.

- During the period of June 1, 2012, through September 25, 2012, Ms. Burroughs denied approval of sick leave requested by the complainant.

- During the weeks of September 24, 2012, and September 27, 2012, ongoing, Ms. Burroughs carbon copied (cc's) e-mail correspondence (that contained privileged information and personal communications) to Ms. Zelda Davis.

- On October 22, 2012, Ms. Burroughs issued the complainant a letter of reprimand for inappropriate conduct on August 2, 2012, and September 27, 2012.

- On November 26, 2012, Ms. Burroughs issued the complainant written notice, regarding his failure to properly request leave in advance from his supervisor.

- On November 29, 2012, complainant reported Ms. Burroughs required him to return to the facility to enter his leave request into IFCAP, and as a result, he incurred an excessive trip of sixty-four miles to do so.

**Exhibit 16**, Notice of Acceptance of EEO Complaint (00207-00210)

*Consolidation and Investigation of Plaintiff's Discrimination Complaints*

14.  Defendant's Office of Resolution Management consolidated case numbers 2004-
0006-2012104057 and 2004-0006-2012104856 into one complaint. *Exhibit 17*,
Notice of Consolidation of EEO Complaints (00249-250).

15.  Office of Resolution Management Investigator Kevin M. McGovern conducted an
investigation of the consolidated discrimination complaint, which consisted of the
following claims:

> Whether the complainant was subjected to a hostile work environment based on
> race (Black), sex (male), national origin (African American), age and reprisal for
> prior EEO activity as evidenced by the following events:

> - On May 4, 2012, Alice Muellerweiss (AM), Dean of VA Learning
>   University (VALU), "poked fun" at the complainant and spoke
>   about him in a "condescending manner" during an employee's
>   farewell ceremony.

> - On May 4, 2012, July 23, 2012, and July 24, 2012, the complainant
>   became aware that management officials removed "key members"
>   of his team and reassigned them, without involving him in the
>   decision.

> - On May 7, 2012, Dr. Reginald Vance (Dr. RV), Acting
>   Supervisory Management Analyst, yelled at and pointed his finger
>   in the complainant's face.

> - On June 16, 2012, the complainant was informed by a peer that Dr.
>   Arthur McMahan (Dr. A. McM), Deputy Dean, called the
>   complainant a 'smart ass' and 'a know it all,' and stated that he did
>   not like him.

> - On August 2, 2012, Zelda Davis, Supervisor, approached the
>   complainant in an intimidating and hostile manner, wherein she
>   pointed her finger in his face and used expletives.

> - On August 30, 2012, and September 24, 2012, Ms. Chris
>   Burroughs, Director, Policy Plans and Resources, failed to approve
>   and grant the complainant's compensatory (comp) time earned
>   during the period of August 24-August 29, 2012.

6

- On September 4, 2012, Ms. Burroughs displayed an intimidating manner towards the complainant when she criticized his work efforts, issued complainant a "letter of concern."

- On September 21, 2012, Ms. Burroughs investigated an incident that occurred on September 2, 2012, that was allegedly biased and portrayed the complainant in an unfavorable manner.

- During the period of June 1, 2012, through September 25, 2012, Ms. Burroughs denied approval of sick leave requested by the complainant.

- During the weeks of September 24, 2012, and September 27, 2012, ongoing, Ms. Burroughs carbon copied (cc's) e-mail correspondence (that contained privileged information and personal communications) to Ms. Zelda Davis.

- On October 22, 2012, Ms. Burroughs issued the complainant a letter of reprimand for inappropriate conduct on August 2, 2012, and September 27, 2012.

- On November 26, 2012, Ms. Burroughs issued the complainant written notice, regarding his failure to properly request leave in advance from his supervisor.

- On November 29, 2012, complainant reported Ms. Burroughs required him to return to the facility to enter his leave request into IFCAP, and as a result, he incurred an excessive trip of sixty-four miles to do so.

*Exhibit 18*, Investigative  Report In the Matter of the EEO Complaint of Orlando Jones.

*Equal Employment Opportunity Commission Proceedings*

16.  Plaintiff requested a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Judge concerning case numbers 2004-0006-2012104057 and 2004-0006-2012104856. *Exhibit 19*, EEOC Acknowledgement and Order dated March 27, 2014.

17.  The EEOC assigned Plaintiff's discrimination complaint, consisting of case numbers 2004-0006-2012104057 and 2004-0006-2012104856, to Administrative Judge Kimberly A. Greenleaf of the Miami District Office. See id.

18.  On May 22, 2015, Administrative Judge Greenleaf entered an Order of Voluntary Dismissal, because Plaintiff's counsel advised her that Plaintiff intended to file suit in U.S. District Court. *Exhibit 20*, Order of Dismissal dated May 22, 2015.

## ALLEGATIONS CONCERNING DISCRIMINATION, RETALIATION, AND HOSTILE WORK ENVIRONMENT

### *Ms. Muellerweiss' May 4, 2012 Comment*

19.  On May 4, 2012, VALU staff participated in a farewell ceremony for Anita Wood. *Exhibit 3*, *Muellerweiss Depo*. at 21:6-14; *Exhibit 10*, *Burroughs Depo*. at 33:18-25, 34:1-2; *Exhibit 8*, *Davis Depo*. at 57:5-17; *Exhibit 6*, *Vance Depo*. at 33:6-12; *Exhibit 1*; *Wood Depo*. at 23:1-10.

20.  During the ceremony, VALU Dean Muellerweiss gave a presentation. Exhibit *3*, *Muellerweiss Depo*. at 23:11-18.  Following her presentation, Ms. Muellerweiss recalled saying something to the effect that she needed to find a chair. Id.

21.  Plaintiff, who followed Ms. Muellerweiss as a speaker during the May 4, 2012 ceremony, recalled Ms. Muellerweiss saying, "Oh dag, here comes Orlando.  I might as well take a seat." *Exhibit 21*, *Interview of Orlando Jones during EEO Investigation*, dated April 8, 2013 ("*Jones Interview*") 16:1-8.

22. Ms. Wood could not recall exactly what was said, but did remember experiencing an "uncomfortable feeling." *Exhibit 1*, *Wood Depo*. at 23:12-15.

23.  Dr. Vance attended the May 4, 2012 ceremony, but did not recall Ms. Muellerweiss making any comment. *Exhibit 6*, *Vance Depo*. at 33: 6-16.

24.   Ms. Burroughs attended the May 4, 2012 ceremony, and recalled Ms. Muellerweiss

asked Plaintiff not to be "too long-winded," or words to that effect. ***Exhibit 10***,

*Burroughs Depo.* at 34:7-10.

25.   Ms. Davis attended the May 4, 2012 ceremony, but did not hear Ms. Muellerweiss

make any derogatory comments towards Plaintiff. ***Exhibit 8***, *Davis Depo.* at 57:13-

17.

***Dr. Vance's May 7, 2012 Encounter with Plaintiff***

26.   Following Ms. Wood's departure from VALU in May 2012, Dr. Vance was

appointed Acting Director of Policy and Resource Management. ***Exhibit 6***, *Vance*

*Depo.* 11:14-25; 12:1-13.  Thus, he became Plaintiff's interim supervisor.  Id.

27.  When Dr. Vance assumed the interim position as Acting Director of Policy and

Resource Management, he held initial, one-on-one meetings with each member of the

Policy and Resource Management team, including Plaintiff, "to just get a sense of the

work that was being performed and how [he] could assist them with getting their

work done." ***Exhibit 5***, *Vance Interview* 11:3-11.

28. Dr. Vance met with Plaintiff on May 7, 2012.   Plaintiff displayed hostility during the

meeting on May 7, 2012, claiming that Dr. Vance did not respect him. ***Exhibit 22***,

ROI at 00426, *Vance Email to Muellerweiss and McMahan* dated May 8, 2012.

Describing the encounter, Dr. Vance wrote:

> I don't believe [Plaintiff] is very happy about not assuming Anita [Wood]'s
> position.
>
> He was very hostile during our first session yesterday.  When I inquired about the
> hostility, he responded, 'I don't think you respect me.' I literally thought he was
> joking.  When I noticed the increasing seriousness in tone, I further inquired 'why
> would you say that.' He told me it was "mother's whit." I told him his mother's
> whit was unfounded and that was not the case.  He persisted to tell me he was a

big shot, who ran a multi-million dollar business and referred to me as a youngster.  I ignored the obvious attempts to spur confrontation.

Subsequently, Orlando accompanied me to two meetings and showed no outward signs of hostility.  Based on his tone this morning, I anticipate potential disruptions."

Id.

29.  Plaintiff later informed Dr. McMahan of his May 7, 2012 encounter with Dr. Vance.

*Exhibit 4*, *McMahan Interview* 10:11-23, 11:1-7.  Dr. McMahan, who attempted to

resolve the matter, believed Plaintiff understood they would work as a team and that

Dr. Vance would serve as the supervisor.  Id.  Dr. McMahan did not recall Plaintiff

stating Dr. Vance harassed him.  Id.

***Dr. McMahan's Alleged Reference to Plaintiff as a "Smart-Ass" and a "Know-it-All" Who Dr. McMahan Did Not Like***

30.  Plaintiff learned second-hand that Dr. McMahan called him a "smart-ass" and a

"know-it-all" and expressed his dislike for him.  *Exhibit 21*, *Jones Interview* 28:18-

20, 29:1-20.

31. Plaintiff did not discuss the alleged remarks with Dr. McMahan or any other VALU

manager.  Id. at 30:1-3.

32. Dr. McMahan denied making the statement, since he did not feel that way about

Plaintiff.  *Exhibit 4*, *McMahan Interview* 11:12-19, 12:1-2.

***VALU Reorganization and Reassignment of Staff***

33.  VALU underwent reorganization in 2012, due to an investigation and the need to

reassign personnel in order to "keep our heads above water" and "to keep the offices

running."  *Exhibit 10* Burroughs Depo. 57:12-25; see *Exhibit 6*, Vance Depo. 34:25,

35:1-6.  Personnel were required to move because of an investigation into

improprieties. *Exhibit 10*, Burroughs Depo. 58:12-25. The personnel who were

10

involved could no longer perform their jobs, necessitating reassignments until the investigation was completed. <u>Id</u>. 58:23-25.  Three or four personnel were transferred to the Office of Policy and Resource Management.  <u>Id</u>. 58:15-16.

34.  The reorganization resulted in the movement of 25 personnel, with only one individual, David Austin, being transferred from Ms. Burroughs' Policy and Resource Management team.  <u>Id</u>. 58:1-25, 59:3-6.

35.  Because he was not a supervisor, there was no reason to consult Plaintiff about Mr. Austin's transfer or any other personnel transfer within VALU due to the 2012 reorganization.  <u>Id</u>. 58:1-4, 59:1-3.

### *August 2, 2012 Incident Involving Plaintiff and Ms. Davis*

36.  On August 1, 2012, Ms.  Muellerweiss informed her staff that the VALU leadership team, including the Directors, would be working at an offsite VA facility on August 2, 8 and 9, 2012.  *Exhibit 23*, Muellerweiss Email to VALU Core Staff dated August 1, 2012 (from Plaintiff's discovery responses).  Ms. Muellerweiss designated individuals who would serve in acting capacities for the Dean, Deputy Dean, as well as head of each VALU directorate. <u>Id</u>. Ms. Davis was designated Acting for the Office of Policy and Resource Management.  <u>Id</u>.

37.  Ms. Davis was appointed Acting Director for the Policy and Resource Management team during this time because her knowledge of reports and "statuses that they may inquire about" during her absence. *Exhibit 10*, *Burroughs Depo*. 28:11-17.

38.  On August 2, 2012, Ms. Davis and other VALU personnel grew concerned because Plaintiff, who had not been feeling well, had been away from the office for hours. *Exhibit 8*, *Davis Depo*. 63:9-17. Because she was concerned, Ms. Davis went to look

for Plaintiff.  Id. 64:22-24. She walked the entire floor but he was not in the office. Id. 63:20. Ms. Davis then went on a break, when she returned Plaintiff was back in the office.  Id. 63:21-25, 64:1.

39.  Ms. Davis asked Plaintiff to join her in the conference room. Id. 64:2-3. When they entered the room, Ms. Davis asked about Plaintiff's whereabouts earlier that day.  Id. 64:3-9. Plaintiff began yelling, as Ms. Davis informed him she was simply asking a question because they [the VALU staff] are supposed to tell others when they leave the office.  Id.

40.  At one point during the conversation, Plaintiff opened the conference room door and instructed Ms. Davis to stop yelling at him. Id. 65:4-6. Ms. Davis told him she was not raising her voice. Id. 65:6-8. Plaintiff then moved closer to Ms. Davis, and warned her to stop yelling at him. Id. 65:13-15. Ms. Davis asked him whether he intended to hit her.  Id. 65:15-16. Ms. Davis then called out to the VALU employees who were present, "[Plaintiff] is trying to make a scene." Id. 65:17-18.

41.  That same day, Ms. Davis reported the incident to Ms. Burroughs via email. *Exhibit 24*, Email *from Ms. Davis to Ms. Burroughs dated August 2, 2012*.  Drs. Vance and McMahan were also informed of the incident. *Exhibit 25*, *Email from Ms. Burroughs to Ms. Davis, copying Drs. Vance and McMahan dated August 2, 2012.*

42.  Ms. Davis emailed the staff apologizing to those who witnessed her encounter with Plaintiff that day.  *Exhibit 26*, *Email from Ms. Davis to VALU staff* dated August 2, 2012.  VALU staff provided written statements regarding the August 2, 2012 incident.

- On August 3, 2012, Debra Marchant sent an email to Ms. Davis regarding the August 2 incident. *Exhibit 27*, *Email from Debra Marchant to Ms. Davis dated August 3, 2012*. Ms. Marchant recalled that Plaintiff was not at his desk prior to 11 that morning and did not return to the office until sometime after 1 that afternoon. Id. Ms. Marchant further recalled Ms. Davis asking to speak with Plaintiff, and then hearing raised voices in the conference room. Id. According to Ms. Marchant, Plaintiff came out of the conference room and in a raised voiced asked the staff whether they heard Ms. Davis instruct him to not raise his voice at her. Id.

- On August 3, 2012, Carmen Hoge sent an email to Ms. Davis regarding the August 2, 2012 incident. *Exhibit 28*, *Email from Carmen Hoge to Ms. Davis dated August 3, 2012*. Ms. Hoge recalled the incident happened "out of the blue," and she heard Plaintiff stating Ms. Davis raised her voice. Id. She further recalled Ms. Davis informing Plaintiff that she was not raising her voice, and was requesting that he inform her or others when he planned to be away from his desk for a significant period of time. Id.

***Ms. Burroughs' Return to the Office Following the August 2, 2012 Encounter***

43. When Ms. Burroughs returned to the VALU offices, Plaintiff stomped around her office while expressing his disagreement with Ms. Burroughs placing Ms. Davis in charge of the Policy and Resource Management team during her absence from the office. *Exhibit 10*, *Burroughs Depo*. 28:18-22. Plaintiff told Ms. Burroughs that she did not have the authority to place anyone over him during her absences from work, particularly someone who was junior in grade to him. Id. 28:22-25.

13

***Ms. Burroughs' Investigation of Plaintiff's August 2, 2012, Encounter with Ms. Davis***

44.  Upon her return to the VALU offices, Ms. Burroughs also directed Ms. Davis to write a statement concerning the incident. ***Exhibit 9***, *Burroughs Interview* 17:18-19. Ms. Davis completed the statement on August 7, 2012. ***Exhibit 29***, ROI 00402-00403, *Statement Prepared by Ms. Davis dated August 7, 2012.*  Ms. Burroughs contacted human resources personnel, who directed her to gather statements from witnesses and send them to human resources. ***Exhibit*** *9*, *Burroughs Interview* 17:19-21.  Ms. Burroughs forwarded statements she received from witnesses and Plaintiff to human resources personnel.  Id.

***Plaintiff's Disrespectful Behavior towards Ms. Burroughs on September 27, 2012***

45.  On September 20, 2012, Ms. Burroughs informed Plaintiff she was unable to approve leave other than for September 28, 2012, because his sick leave balance was too low. ***Exhibit 30***, *Ms. Burroughs' Email to Plaintiff dated September 20, 2012.*  Ms. Burroughs requested that Plaintiff change the type of leave so she could approve his requests. Id.

46.  On September 24, 2012, Plaintiff disagreed with Ms. Burroughs' accounting of his leave. Id.  Plaintiff copied Ms. Davis on the email.  Id.  Minutes later, Ms. Burroughs responded by email informing Plaintiff that all of his previous sick leave requests had been processed, leaving him with insufficient leave to cover his projected leave. Id. Ms. Burroughs copied Ms. Davis on the September 24 email, just as she had done in the aforementioned September 20 email.  Id. Ms. Burroughs invited Plaintiff to instead use annual leave, or to request advanced medical leave, if he could provide medical justification. Id.

47.  During the afternoon of September 24, 2012, Ms. Burroughs asked Plaintiff to

include the timekeepers in his leave requests, in accordance with her directions from

August 16, 2012. ***Exhibit 31***, *Email from Ms. Burroughs to Plaintiff dated*

*September 24, 2012*.  Plaintiff responded to Ms. Burroughs later that afternoon,

advising her that he reviewed all of her messages from August 16, 2012, but did not

locate "a (sic) email of instructions." Id. Later that day, Ms. Burroughs reminded

Plaintiff that she provided the information during a staff meeting held August 16,

2012.  Id.  Responding to Ms. Burroughs, Plaintiff stated: "I don't recall—this is a

non[-]traditional way in which you communicate, perhaps you did not speak loud

enough or whatever?  I did not hear you and I do take detailed notes[.]" Id.  Ms.

Burroughs responded a little over an hour later, reminding Plaintiff that, "[o]n

Aug[ust] 16, 2012 during the directorate meeting I reviewed the VALU leave policy

and then provided all members with a copy of the policy.  It was exceptionally clear

that the policy was current and would be used as guidance.  The group had many

questions on application of the policy and you were in attendance." Id.  Ms.

Burroughs also informed Plaintiff that she found the tone of his exchanges with her

"unprofessional" and expressed her expectation that he address her in a professional

and respectful manner. Id.

48.   On September 25, 2012, Debra Marchant, a Program Specialist in Policy and

Resource Management, confirmed for Plaintiff and Ms. Burroughs that the sick leave

balances Plaintiff highlighted the day before did not reflect 35 hours of leave used

September 12 through 14, 2012 and September 17, 2012, during Pay period 20. Id.

49. Plaintiff responded to Ms. Marchant and Ms. Burroughs on September 27, 2012, stating his sick leave should not have been disapproved because he had available hours. Id. Ms. Burroughs thereafter offered Plaintiff a review of his leave balances. Id. However, she informed him it was not acceptable to be rude to staff and instructed him to stop. Id.

***Ms. Burroughs' Emails During the September 24 through 27, 2012 Time Period Which Included Copies to Ms. Davis***

50. Ms. Burroughs included Ms. Davis on the emails described in ¶¶ 45-49, supra, because Ms. Davis was the human resources liaison. **Exhibit 10**, *Burroughs Depo*. 68:22-25, 69:1-13.

***Ms. Burroughs' Decision to Issue a Written Reprimand***

51. On October 22, 2012, Ms. Burroughs issued a written reprimand to Plaintiff due, in part, to his emails he sent Ms. Burroughs and other staff members on September 27, 2012. **Exhibit 32**, *Letter of Reprimand dated October 22, 2012*. Ms. Burroughs informed Plaintiff she found the emails "both rude and disrespectful," as well as "unprofessional." Id.

**52.** Ms. Burroughs also issued the written reprimand in response to Plaintiff's encounter with Ms. Davis on August 2, 2012. Id. Human resources personnel recommended Ms. Burroughs reprimand Plaintiff for his actions on August 2, 2012. **Exhibit 10**, *Burroughs Depo*. 47:9-19. Ms. Burroughs explained that she initially considered whether the August 2 incident reflected two people having a difference of opinion. Id. 72:10-25, 73:1-4. However, her own encounter with Plaintiff, during which he yelled at her and pointed his finger in her face, led Ms. Burroughs to conclude that the August 2 incident was not a misunderstanding. Id.

***Response to Plaintiff's Request for Compensatory Time***

53.  On or about August 24, 2012, VALU detailed Plaintiff to assist with setting up a conference in Phoenix, Arizona. Complaint ¶ 36-37; ***Exhibit 10***, *Burroughs Depo*. 52:1-12.

54.   Plaintiff requested compensatory time for hours he worked beyond the normal 40 hour work week during the period August 24 to 29, 2012.  Complaint ¶ 37.

55.  Ms. Burroughs did not approve Plaintiff's request for compensatory time because of problems with his compressed work schedule, "where you work nine hours a day and you have one day off." ***Exhibit 10***, *Burroughs Depo*. 52:13-25, 53:1-6.  Ms. Burroughs was unable to approve the compensatory time request at that juncture because Plaintiff "had not worked 80 hours in the previous [pay] period." Id. 52:18-21.

56.  Plaintiff received his compensatory time when matters regarding the compressed work schedule day were "straightened out." Id. 53:8-9.

***September 4, 2012 Discussion Regarding Plaintiff's Work Performance***

57.   When Ms. Wood departed VALU in May 2012, she provided a summary review of Plaintiff's performance, since the performance review period which ran from October 1, 2011 through September 30, 2012, had not yet expired.  Id. 62:18-25, 63:1-5.

58.   Although Ms. Wood gave Plaintiff an outstanding summary review, she noted "three items he was required to achieve by the end of the performance period." Id.

59.  Directed by human resources, Ms. Burroughs spoke to Plaintiff about completing the items.  Id. 63:18-21.

60.  Ultimately, Ms. Burroughs rated Plaintiff satisfactory, even though he did not turn in the required work products. Id. 65:13-19.

***Allegations Concerning Denial of Leave Requests***

61.  In September 2012, Ms. Burroughs denied a request Plaintiff submitted for sick leave because he did not have sufficient leave to support the request.  See ¶¶ 45-48, supra. Plaintiff never failed to take leave pursuant to a request.  (Burroughs Depo at 51)

62.  Plaintiff took sick leave even when Ms. Burroughs did not approve the requests.

***Exhibit 10***, *Burroughs Depo*. 50:11-25, 51:1-6.

***Notice from Ms. Burroughs on November 26, 2012 Regarding Failure to Request Leave in Advance and November 29, 2012, Incident Regarding Failure to Enter Leave Request***

63. On or about November 26, 2012, Plaintiff was on leave, but had not entered his leave. Id. 54:20-25.

64. Ms. Burroughs did not ask Plaintiff to return to the office, but informed him that he could send her an email regarding his leave status. Id. 55:1-25.  Plaintiff, instead, informed Ms.  Burroughs he would come to the office and that he would not be responsible for what happened when he arrived. Id.

65. Ms. Burroughs then went to the office of Catherine Biggs-Silvers, who was the head of VALU at that time. Id. Ms. Burroughs informed Ms. Biggs-Silvers of her conversation with Plaintiff. Id. As she was talking to Ms. Biggs-Silvers, Plaintiff appeared at the office door, looking disheveled and "literally foaming at the corners of his mouth." Id.  Plaintiff informed Ms. Biggs-Silvers that she had approved his leave request. Id. Ms. Biggs-Silvers asked Plaintiff why he did not request leave from Ms. Burroughs, his supervisor. Id. Ms. Biggs-Silvers suggested that Plaintiff enter the leave since he was in the office. Id.

*Reasonable Accommodation*

66. Ms. Davis' responsibilities included assisting with the Reasonable Accommodation process. Exhibit 8, Davis Depo. 17:19-25; 18:1-8

67. Plaintiff did not request a reasonable accommodation for his disability. Id. 16: 3-7; Exhibit 10, Burroughs Depo. 68: 10-21 (Ms. Burroughs states Plaintiff did not request any accommodations).

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar No. 415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division

By:      /s/  *Wyneva Johnson*
WYNEVA JOHNSON, D.C. Bar No. 278515
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2518
Wyneva.johnson@usdoj.gov

*Of Counsel:*
Darryl Joe
Attorney
Office of General Counsel
Department of Veterans Affairs

19

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| ORLANDO JONES, | **)** <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. 15-1384 (CRC) <br> ) <br> ) |
| DAVID J. SHULKIN, M.D., <br> Secretary, <br> DEPARTMENT OFVETERANS AFFAIRS, | ) <br> ) <br> ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

---

### DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

David J. Shulkin, M.D., Secretary of the Department of Veterans Affairs ("Defendant"), respectfully submits this Memorandum of Points and Authorities in support of Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment.

### STATEMENT OF MATERIAL FACTS

Defendant incorporates herein by reference Defendant's Statement of Material Facts, as to which there is no genuine dispute, which has been filed contemporaneously with this Memorandum.[1]

### PRELIMINARY STATEMENT

Plaintiff, a former employee of the Department of Veterans Affairs' Learning University (VALU), brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42

---

[1] Reference to Defendant's Statement of Material Facts as to which there is No Genuine Dispute, shall be "Fact ¶ __."

U.S.C. 2000E, *et seq.*, and Title I of the Americans with Disabilities Act, 42 U.S.C. 12101, *et seq*,[2] alleging discrimination based on race, gender, disability, and retaliation. Complaint ¶ 4.  In particular, Plaintiff, an African-American disabled male, alleges he was subjected to a hostile work environment and discriminated and retaliated against during a six-month period in 2012. Among his claims, he alleges Alice Muellerweiss, the Dean of VALU poked fun at him and spoke about him in a condescending manner when she remarked to an audience gathered for a farewell ceremony, "Oh dag, here comes Orlando.  I might as well take me a seat, he's going to be forever."  Fact ¶21; see Complaint ¶ 24.  Plaintiff likewise alleges he was subjected to unlawful harassment, discrimination, and retaliation when: (1) his Acting supervisor, Reginald Vance, Ph.D., yelled at him on May 7, 2012, and pointed a finger in his face; (2) on June 16, 2012, someone told Plaintiff that Arthur McMahan, Deputy Dean of VALU, called Plaintiff a "smart-ass" and  a "know-it-all" and said he did not like Plaintiff; (3) on August 2, 2012, Zelda Davis, a VALU employee who had been temporarily placed in charge of VALU's Office of Policy and Resource Management during the Director's (Ms. Christopher Burroughs) absence, approached Plaintiff in an intimidating manner, pointed a finger in his face and cursed at him; (4) on various dates between August and November 2012, Ms. Burroughs denied Plaintiff's request for compensatory time, criticized his work performance, investigated the August 2, 2012 incident involving Ms. Davis and later reprimanded Plaintiff, and included Ms. Davis on emails concerning Plaintiff; and (5) on various dates between June and November 2012, denied Plaintiff's leave requests or questioned him about matters regarding leave. Complaint ¶¶ 25-49.

---

[2] Plaintiff cites Title I of the Americans with Disabilities Act, 42 U.S.C. 12101, *et seq*., as the authority for his disability complaint.  Section 501 of the Rehabilitation Act, codified at 29 U.S.C. § 791, provides the exclusive remedy for federal employees alleging that federal agencies engaged in disability discrimination.

Defendant is entitled to dismissal of Plaintiff's disability discrimination claims, including claims based on failure to reasonably accommodate his disabilities, and summary judgment on the remaining claims.  With respect to all claims brought under the Americans with Disabilities Act and the Rehabilitation Act, Plaintiff failed to exhaust his administrative remedies. See Fact ¶¶ 8-18. There is no evidence that Plaintiff submitted a formal complaint regarding disability claims, and the record does not show he raised such claims during the investigation of his discrimination complaints, or before the Equal Employment Opportunity Commission prior to withdrawing his complaints from that forum and filing a complaint in this Court. Id.  Accordingly, Plaintiff's claims based on the theory of disability discrimination should be dismissed for failure to exhaust administrative remedies. 42 U.S.C. § 200e-16(c); 29 U.S.C. § 794A (a)(1).

Plaintiff's claims all fail because he cannot establish discrimination or retaliation based on any protected category.  While Defendant does not dispute that Plaintiff is a member of a protected class, and his employer was aware of his protected activity, he cannot show that he was subjected to any adverse employment action because of his race, gender, disability, or prior protected activity.  He also cannot demonstrate his employer treated him differently than any similarly-situated person not within his protected class, or that any action taken was due to a protected category.

Further, Plaintiff cannot show that incidents which occurred between May and November 2012, involving his co-workers, supervisors, and managers, subjected him to a workplace environment sufficiently hostile or abusive to be actionable.  None of the alleged comments by his supervisors and managers referenced his race, gender, disability, or prior protected activity; thus, they cannot support a conclusion that Plaintiff was harassed because of any protected

activity.  Further, the incidents cited by Plaintiff do not rise to the level of severe or pervasive so as to support a hostile work environment claim.  Therefore, even assuming that all of Plaintiff's allegations are true, those allegations cannot establish that Plaintiff's work environment was objectively "severely hostile or abusive."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82, (1998).

## LEGAL STANDARDS

### I.      Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of claims where the Court "lacks[s] jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  See Curran v. Holder, 626 F. Supp. 2d 30, 32, (D.D.C. 2009) ("Rule 12(b)(1) presents a threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance.") (internal citation and quotation marks omitted).  "A federal court presumptively lacks jurisdiction in a proceeding until a party demonstrates that jurisdiction exists.  A party must therefore affirmatively allege in his pleadings the facts showing the existence of jurisdiction, and the court must scrupulously observe the precise jurisdictional limits prescribed by Congress."  Commodity Futures Trading Commission v. Nahas, 738 F.2d 487, 492 n.9 (D.D.C. 1984). See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) ("[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction.").

A Rule 12(b)(1) Motion to Dismiss for lack of jurisdiction may be presented as either a facial or factual challenge.  In a facial challenge, the court may decide the motion based solely on the complaint.  Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992); Al-Owhali v. Ashcroft, 279 F.Supp. 2d 13, 20 (D.D.C. 2003) ("A facial challenge attacks the factual allegations of the complaint that are contained on the face of the complaint.") (internal

quotations and citations omitted).  However, to determine the existence of jurisdiction in a

factual challenge, a court may look beyond the allegations of the complaint, consider affidavits

and other extrinsic information, and ultimately weigh the conflicting evidence.  See Herbert, 974

F.2d at 197; Jerome Stevens Pharmacy, Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005)

(Noting that, with respect to a factual challenge, the district court may consider materials outside

of the pleadings to determine whether it has subject matter jurisdiction over the claims.)

Applying either analysis, Plaintiff's disability discrimination claims, to include allegations of

failure to reasonably accommodate his disabilities, must be dismissed.

## II.     Motion for Summary Judgment Pursuant to Rule 56

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:

"shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with affidavits, if any, show that there is no genuine issue as to any material fact and

that the movant is entitled to a judgment as a matter of law."

Summary judgment is an integral part of the overall design of the rules of civil procedure,

which is to secure the just, speedy, and inexpensive determination of every action.  Celotex

Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The party moving for summary judgment bears the initial responsibility of informing the

trial court of the basis for its motion and identifying those portions of the record which it

believes demonstrate the absence of a genuine issue of material fact.  Alexis v. District of

Columbia, 44 F.Supp. 2d 331, 337 (D.D.C. 1999); Celotex Corp., 477 U.S. at 323.  When the

moving party has carried its burden, the responsibility shifts to the nonmoving party to show that

there is actually a genuine issue of material fact for trial.  Alexis, 44 F.Supp. 2d at 337.  In

assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most

favorable to the non-moving party." N.S. ex rel. Stein v. District of Columbia, 709 F. Supp. 2d 57, 65 (D.D.C. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).  The opposing party, however, must provide "specific facts showing that there is a genuine issue for trial," and "may not rely on mere allegations or denials to prevail."  Id.  Indeed, to defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial."  Celotex at 324 (internal quotation marks omitted).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation.  Id.  The existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which a jury reasonably could find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (Court explains that reliance upon mere allegations, conjecture, or implausible inferences is not sufficient to survive summary judgment).  If "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Lash v. Lemke, 786 F.3d 1, 6 (D.C. Cir. 2015) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007).

The trial court must enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322; see also Alexis, 44 F.Supp. 2d at 337 ("Rule 56(c) mandates summary judgment" in this circumstance) (emphasis added).

**ARGUMENT**

**THE COURT SHOULD DISMISS PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS FOR FAILURE TO EXHAUST**

A federal employee must exhaust his administrative remedies before the relevant federal agency before filing suit under Title VII or the Rehabilitation Act.  See 42 U.S.C. § 2000E-16(c) (requiring exhaustion under Title VII procedures); 29 U.S.C. § 794A(a)(1) (applying the remedies, procedures, and rights under Title VII claims to Rehabilitation Act claims); Payne v. Salazar, 619 F.3D 56, 58 (D.C. Cir. 2010); Mahoney v. Donovan, 824 F. Supp. 2d 49, 58 (D.D.C. 2011).  The exhaustion requirement is "not a mere technicality."  Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995).  Rather, the requirement is "mandatory and serves to allow the agency an opportunity to resolve the matter internally and avoid unnecessarily burdening the courts."  Bush v. Engleman, 266 F. Supp. 2d 97, 101 (D.D.C. 2003).

Failure to exhaust administrative remedies for a Rehabilitation Act claim is a jurisdictional defect.  See Koch v. Walter, 935 F. Supp. 2d 164, 170 (D.D.C. 2013) (citing Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir. 2006)).  In a Rehabilitation Act case, because exhaustion establishes a jurisdictional threshold, "it is [the plaintiff's] burden to show that he has exhausted his claims administratively before filing suit."  Koch v. Walter, 935 F. Supp. 2d at 170.

The formal discrimination complaints Plaintiff submitted in September 2012, and January 2013, expressly demonstrated his belief that his employer discriminated against and harassed him because of his age, gender, race, reprisal, and national origin. Fact ¶¶ 10, 13.  Consistent with his theory, when he submitted his formal discrimination complaints, Plaintiff did not allege unlawful disability discrimination. Id.  Plaintiff's claims of disability discrimination cannot be deemed exhausted by virtue of his formal EEO complaints of age, gender, race, and national

origin discrimination, and retaliation.  See Bowe-Connor v. Shinseki, 923 F. Supp. 2d 1, 7 (D.D.C. 2013) (concluding that Plaintiff's claim that she failed to receive a bonus because of her national origin was not reasonably related to the allegations in her EEO complaint, which only alleged age and gender as the bases for discriminatory treatment)

Defendant's letters accepting Plaintiff's discrimination complaints (2004-0006-2012104057 and 2004-0006-2012104856) do not include any allegations that Plaintiff was discriminated against because of his disability. Fact ¶¶ 10, 13. While Defendant acknowledges Plaintiff reportedly mentioned disability as a basis for discrimination during a discussion with an EEO counselor (concerning case number 2004-0006-2012104856) on or about October 25, 2012, Fact ¶ 12, he "could not articulate why he felt that he was being discriminated against based on his . . . disability." See Exhibit 14. Thus, Plaintiff did not allege disability discrimination when he filed his formal complaint in January 2013. Fact ¶ 13.

Plaintiff may not now rely on disability discrimination allegations which appear in an EEO Counselor Report to argue he exhausted his administrative remedies for  Rehabilitation Act claims.  See Dick v. Holder, 80 F. Supp. 3d 103 (D.D.C. 2015) (filing a formal complaint is a prerequisite to exhaustion, so a plaintiff cannot rely on an Equal Employment Opportunity counseling report to establish exhaustion of a claim that he failed to include in his formal complaint).    To allow Plaintiff to belatedly pursue his disability claims in this forum requires the Court to ignore Plaintiff's subsequent affirmative actions taken in pursuit of his discrimination complaint.  The record confirms Plaintiff submitted a formal discrimination complaint, wherein he did not mention disability as a basis for unlawful discrimination.  Fact ¶ 13.  The record does not show that when Defendant's Office of Resolution Management accepted case numbers 2004-0006-2012104057 and 2004-0006-2012104856, Plaintiff

complained that his disability claims were not included as a basis for discrimination and a matter for investigation.

Here, when the Office of Resolution Management interviewed Plaintiff in connection with its investigation of his discrimination claims, none of the claims discussed pertained to Rehabilitation Act violations or discrimination or retaliation based on disability.  Fact ¶ 15.  In sum, the record does not show Plaintiff took any action to place Defendant on notice of any Rehabilitation Act or disability claims.  If Plaintiff believed such claims were improperly omitted from the matters accepted and referred for investigation, "he certainly had the opportunity (and informed responsibility) to apprise the agency of its error."  Hamilton v. Geithner, 743 F. Supp. 2d 1, 12 (D.D.C. 2010), rev'd in part on other grounds, 666 F.3d 1344 (D.C. Cir. 2012).

Consequently, because Plaintiff failed to exhaust his claims alleging discrimination based on disability, the Court should dismiss such claims.

**PLAINTIFF WAS NEITHER SUBJECTED TO DISPARATE TREATMENT NOR RETALIATED AGAINST BECAUSE OF ANY PROTECTED CATEGORY, INCLUDING DISABILITY**

If the Court, however, accepts jurisdiction over the disability claims, those and Plaintiff's remaining claims must be denied as a matter of law. A Plaintiff alleging discrimination and retaliation must present substantial and credible evidence in order to survive a Motion for Summary Judgment.  See Woodruff v. DiMario, 164 F. Supp. 2d 1, 5 (D.D.C. 2001), aff'd, 2002 WL 449776 (D.C. Cir. Feb. 21, 2002); Hastie v. Henderson, 121 F. Supp. 2d 72, 77 (D.D.C. 2000), aff'd, 2001 WL 793715 (D.C. Cir. June 28, 2001) ("To defeat a motion for summary judgment, a Plaintiff cannot create a factual issue pretext with mere allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'") (quoting Hayes v. Shalala, 902 F. Supp. 259, 263-64 (D.D.C. 1995)); Greene v. Dalton, 164 F.3d

671, 675 (D.C. Cir. 1999) ("Accepting such conclusory allegations as true, therefore, would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial.").  To survive summary judgment, a Plaintiff must show "that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made" for a discriminatory or retaliatory reason. Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003).

Under the scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff must establish a prima facie case of prohibited discrimination.  See St. Mary's Honor-Center v. Hicks, 509 U.S. 502, 506 (1993).  If the plaintiff establishes a prima facie case, the employer then must articulate legitimate, nondiscriminatory reasons for its actions.  See McDonnell Douglas, 411 U.S. at 802.  The Plaintiff then has an opportunity to discredit the employer's explanation or otherwise demonstrate that discrimination was a motivating factor. Aka v. Washington Hospital Center, 156 F.3d 1284, 1288-89 (D.C. Cir. 1998).

The above notwithstanding, "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas."  Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).  Instead, any adjudication must focus on "one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race?"  Id.

To prevail on a claim of unlawful retaliation under Title VII, an employee must show he "engaged in protected activity, as a consequence of which [his] employer took a materially

adverse action against [him]."  Weber v. Battista, 494 F.3d 179 (D.C. Cir. 2007).  "A materially adverse action is one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  Taylor v. Solis, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (quoting Burlington N. & Santa  Fe RY. Co. v. White, 548 U.S. 53, 57 (2006).  While the three-step burden-shifting test of  McDonnell Douglas applies to retaliation claims based, as here, on circumstantial evidence, the D.C. Circuit has instructed that if the employer offers a legitimate, nondiscriminatory reason for its action, then the court "need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas. "  Brady, supra.  Instead, "the court should proceed to the question of retaliation vel non," which question can be resolved "in favor of the employer based either upon the employee's failure to rebut its explanation or upon the employee's failure to prove an element of [his] case," such as whether "[his] employer took a materially adverse action against [him]."  Taylor, 571 F.3d  at 1320 n.12.

Focus on this "one central inquiry" is appropriate because a legitimate non-discriminatory reason for the employer's actions breaks the necessary "but-for causation" link between the protected activity and the adverse employment action.  See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013).  The presiding Court must consider "this question", "in light of the total circumstances of the case," asking "whether the jury could infer discrimination from the combination of (1) the Plaintiff's prima facie case; (2) any evidence the Plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the Plaintiff or any contrary evidence that may be available to the employer.  Hamilton v. Geithner, 666 F.3d 1344 (D.C. Cir. 2012) (quoting Aka, 156 F.3d at 1289).

Plaintiff's claims include matters, such as entitlement to reasonable accommodation, which may be considered under the Rehabilitation Act. The Rehabilitation Act prohibits federal agencies from discriminating against employees on the basis of a disability.  29 U.S.C. § 794(a); see Taylor v. Rice, 451 F.3d 398, 905 (D.C. Cir. 2006) (The Rehabilitation Act provides a private right of action against federal agencies for employment discrimination claims on the basis of a disability).  For a Plaintiff's Rehabilitation Act claim to survive a motion for Summary Judgment, the Plaintiff "must produce enough evidence to allow a reasonable jury to conclude that he (1) has a disability; (2) was qualified to perform the essential functions of employment with or without reasonable accommodation; and (3) suffered an adverse employment decision due to his disability." Desmond v. Mukasey, 530 F.3d 944, 952 (D.C. Cir. 2008) (citing Duncan v. WMATA, 240 F.3d 1110, 1114 (D.C. Cir. 2001)).

The Rehabilitation Act also requires federal agencies to "mak[e] reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship." Adams v. Rice, 531 F.3d 936, 942-43 (D.C. Cir. 2008) (quoting 42 U.S.C. § 12112(b)(5)(A)).  To determine an appropriate reasonable accommodation, the agency should "initiate an informal, interactive process with the qualified individual with a disability in need of accommodation." 29 C.F.R. § 1630.2(o)(3).  "[A]n employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some reasonable accommodation." Aka, 156 F.3d at 1305.

To survive summary judgment on a failure to accommodate claim, a plaintiff must "come forward with sufficient evidence to allow a reasonable jury to conclude that" he meets four

elements: "(i) [he] was disabled within the meaning of the Rehabilitation Act; (ii) [his] employer had notice of the disability; (iii) he was able to perform the essential functions of [his] job with or without reasonable accommodation; and (iv) [his] employer denied [his] request for a reasonable accommodation of that disability." Solomon v. Vilsack, 763 F.3d 1, 9 (D.C. Cir. 2014).

### *Disability Claim*

As part of his disability claim, Plaintiff contends he was unlawfully denied a reasonable accommodation. Complaint ¶ 2. Again, Defendant is entitled to judgment as a matter of law, because Plaintiff cannot adduce evidence to support his claim.

Defendant has an affirmative duty to provide accommodations to qualified individuals with disabilities. 29 C.F.R. § 1630.2 (o)(3). Key to this process is active interaction with the individual seeking an accommodation. Plaintiff, however, did not request a reasonable accommodation. Because Plaintiff did not request a reasonable accommodation during the period covered by this complaint, Defendant cannot, as a matter of law, be held liable for violating controlling provisions of the Rehabilitation Act and implementing regulations.

There is no support for any claim regarding disability discrimination. Plaintiff can produce no evidence showing his employer took any action or made any decision based on his disability status. Under these circumstances, Defendant is entitled to judgment as a matter of law.

### *Discrimination and Retaliation Claims*

Plaintiff cannot meet his burden of showing that agency personnel acted with discriminatory and retaliatory animus. The facts reflect the agency's legitimate non-discriminatory or retaliatory reasons for each action that actually occurred. See Defendant's Statement of Material Fact as to which there is No Genuine Dispute.

***Remarks Attributed to Ms. Muellerweiss and Dr. McMahan***

Even assuming as true the statements Plaintiff attributes to Ms. Muellerweiss and Dr. McMahan, he cannot show unlawful discrimination or retaliation. Fact ¶¶ 19-25; 30-32.  The comments, if uttered, were totally unrelated to any protected category, and Plaintiff cannot demonstrate those statements constituted an adverse employment action.  Further, there is no indication that any similarly-situated person who was not a member of Plaintiffs protected class received more favorable treatment.  As such, these allegations cannot support his discrimination or retaliation claims.

***May 7, 2012 Encounter with Dr. Vance***

Although Plaintiff may not have been pleased that he did not assume the position Ms. Wood vacated days earlier, see Fact ¶ 28, there is no evidence which shows Dr. Vance reacted to Plaintiff adversely because of his being in a protected category. Even accepting as true, however, that Dr. Vance behaved as Plaintiff alleges, there is no evidence that he did so because of Plaintiff's protected activity or any other protected categories.  Lacking this characteristic, Plaintiff's discrimination and retaliation claim must fail with respect to this allegation.

***Plaintiff's August 2, 2012 Encounter with Ms. Davis***

While Plaintiff may not have agreed with the decision, VALU's senior management placed Ms. Davis in charge of Plaintiff's group on August 2, 2012, which rendered to her certain responsibilities, such as being aware of the employees' whereabouts.  See Fact ¶¶ 36-38. Presuming the accuracy of Plaintiff's recollection of the August 2 encounter, no basis exists to conclude Ms. Davis undertook any action or treated Plaintiff in any manner because of his protected categories.

***Work-related Disputes with Ms. Burroughs***

Plaintiff's discrimination and retaliation allegations appear to involve claims regarding: the reorganization of VALU in 2012; Ms. Burroughs' response to his request for compensatory time for the period August 30, 2012 through September 24, 2012; her criticism of his work performance on or about September 4, 2012; her decision to investigate the August 2, 2012 incident involving Ms. Davis and issuance of a reprimand; and her practice of copying Ms. Davis on emails concerning him.

Such claims fail, as a matter of law, in view of the absence of any evidence showing the legitimate, non-discriminatory bases for the actions were merely pretext designed to mask discriminatory and retaliatory animus. The record clearly reflects Ms. Burroughs could not grant the compensatory time request that Plaintiff requested because of issues regarding his compressed work schedule day. Fact ¶ 55. Moreover, when the issues were resolved, Plaintiff received his compensatory time. Fact ¶ 56. Identical to the issues involving Ms. Burroughs' concerns about Plaintiff's work performance, her decision to investigate the August 2, 2012 incident and the issuance of a reprimand, and her practice of copying Ms. Davis on emails related to Plaintiff, he can adduce no evidence to show his protected categories served as the impetus for the actions taken. These claims, too, should be rejected because Plaintiff fails to satisfy the controlling legal standard.

***Leave Issues***

Plaintiff also appears to contend his employer discriminated and retaliated against him when the following occurred: he was denied sick leave on different occasions between the months of June and September 2012; Ms. Burroughs notified him on November 26, 2012 of his failure to properly request leave; and he was required to return to work on November 29, 2012 to

enter his leave.  Once again, Plaintiff is unable to demonstrate the legitimate non-discriminatory

reasons demonstrated in the record are actually false.  Fact ¶¶ 61-65.  The allegations do not

reflect Plaintiff's protected categories were at the core of any decision regarding his leave

requests.  Moreover, Plaintiff cannot show he experienced any adverse effect in his employment

due to the manner in which his employer resolved his leave issues.  See Fact ¶ 61-62 (reflecting

Plaintiff still took leave,  no matter the decision rendered by his supervisor).  Summary judgment

is warranted for these claims, as well.

**PLAINTIFF WAS NOT SUBJECTED TO A HOSTILE WORK ENVIRONMENT**

Employees are protected from a hostile work environment stemming from discrimination

or retaliation.  A violation occurs where a plaintiff's workplace is "permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

conditions of employment and create an abusive environment."  Harris v. Forklift Systems, Inc.,

510 U.S. 17, 21 (1993).

In Faragher v. Boca Raton, 524 U.S. 775 (1998), the Supreme Court instructed that, in

determining whether a work environment is sufficiently hostile to be actionable under Title VII,

a court is to consider: (1) the frequency of the discriminatory conduct; (2) the severity of the

conduct; (3) whether the conduct is physically threatening or merely offensive; and (4) whether

the conduct reasonably interferes with the employee's performance.  Id. at 787-88.  The Faragher

opinion further stated that "[t]he standards for judging hostility are sufficiently demanding to

ensure that Title VII does not become a 'general civility code.'"  Properly applied, this will filter

out complaints attacking, "the ordinary tribulations of the workplace, such as the sporadic use of

abusive language . . . and occasional  teasing."  Faragher, 524 U.S. at 787 (also stating that

conduct must be "extreme").

16

To establish a prima facie case of hostile work environment harassment, Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment: (3) the harassment occurred because of his protected class; (4) the harassment affected a term, condition, or privilege of his employment; and (5) the agency knew or should have known of the harassment but failed to take prompt corrective action.  See Davis v. Coastal Int'l Sec., Inc., 275 F.3d 1119, 1123 (D.C. Cir. 2002); Lester v. Natsios, 290 F.Supp. 2d 11, 22 (D.D.C. 2003).  A workplace environment becomes "hostile" for purposes of Title VII only when the offensive conduct "permeate[s] [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and creates an abusive working environment."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (citing Harris v. Forklift Systems, 510 U.S. 17, 21 (1993)); see also Clark County School District v. Breeden, 532 U.S. 268, 271 (2001) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are insufficient);  Holbrook v. Reno, 196 F.3d 255, 263 (D.C. Cir. 1999) (to be actionable, harassment must be "sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment'" and "unreasonably interfer[e] with an individual's work performance.") (quoting Meritor Savings Bank v. Vinson, 477 U.S. 57, 65, 67 (1986)).  In evaluating an alleged hostile environment, courts apply an "objective" standard to determine whether, considering all the circumstances, a reasonable person in the plaintiff's position would find the challenged conduct "severely hostile or abusive." Oncale, 523 U.S. at 81-82 (1998) (emphasis added).

Important to a harassment claim is the connection between the alleged hostility and a Plaintiff's protected status. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of

discrimination.  Otherwise, the federal courts will become a court of personnel appeals.  Bryant

v. Brownlee, 265 F.Supp. 52, 63 (D.D.C. 2003) (citing Alfano v. Costello, 294 F.3d 365, 377 (2d

Cir. 2002)).

Plaintiff alleged a hostile work environment marked by incidents that occurred from May

through November 2012.  The limited incidents which Plaintiff claims establish the hostile work

environment include a remark on May 4, 2012 by VALU Dean Muellerweiss; an encounter with

Dr. Vance on May 7, 2012; disparaging remarks he learned of in June 2012 that were attributed

to Dr. McMahan; an encounter with Ms. Davis in August 2012; actions taken by Ms. Burroughs

in September, October and November 2012; and decisions made and actions taken regarding his

leave requests.

### Remarks Attributed to Ms. Muellerweiss and Dr. McMahan

Plaintiff alleges Ms. Muellerweiss made fun of him and spoke condescendingly about

him on May 4, 2012, when she told the audience gathered for Ms. Wood's farewell ceremony,

"Oh dag, here comes Orlando.  I might as well take me a seat, he's going to be forever."  He

further alleges he learned in June 2012 that Dr. McMahan referred to him as a "smart ass" and a

"know-it-all" and informed one of Plaintiff's co-workers that he did not like Plaintiff.  Even

assuming these events occurred just as Plaintiff described, he cannot show these comments were

racially-tinged, or based on his gender.  Indeed, Plaintiff does not allege that Ms. Muellerweiss

or Dr. McMahan ever directed any discriminatory slurs or jokes at him during his tenure with

VALU. Clearly, the alleged comments were not based on Plaintiff's protected categories and,

therefore, cannot support his hostile work environment claims. See  Hardin v. S.C. Johnson &

Son, Inc., 167 F.3d 340, 345-346 (7th Cir. 1999), cert. denied, 528 U.S. 874 (1999) (statements

such as "what the hell are you doing?" and "get your head out of your ass," were held to in no

way indicate a negative attitude toward African Americans or to indicate that "women might be thought to be inferior to men in the workplace, or unworthy of equal dignity and respect").

Further, Plaintiff does not allege either of his former VALU managers made the comments more than once.  Thus, these were singular incidents.  A singular event is insufficient to establish a hostile work environment claim, because the "very nature" of a hostile work environment claim "involves repeated conduct."  See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).  The comments attributed to Ms. Muellerweiss and Dr. McMahan do not reflect an environment *permeated* with discriminatory or retaliatory intimidation, ridicule and insult.  The standards for a hostile work environment are demanding and conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment.  These incidents, whether viewed singularly or taken in combination, simply do not demonstrate sufficiently severe or pervasive conduct to support a hostile work environment claim.  See Harris, 510 U.S. at 23.  Indeed, in numerous reported cases, courts have found much more extreme conduct—conduct explicitly related to protected categories—not to be actionable.  Compare Jackson v. Flint Ink N. Am. Corp., 370 F.3d 791, 796 (8th Cir. 2004);

### May 7, 2012 Encounter with Dr. Vance

Similarly, the May 7, 2012 allegation cannot support a hostile work environment claim.  Even accepting Plaintiff's account as true, see Complaint ¶ 25, "[m]erely being yelled at by your supervisor does not rise to the level of an adverse employment action."   See Russ v. Van Scoyoc Assocs., 122 F.Supp. 2d 29, 32 (D.D.C. 2000).   Like the comments attributed to Ms. Muellerweiss and Dr. McMahan, Plaintiff has alleged only one such encounter with Dr. Vance.  Clearly, a singular, isolated incident, if presumed true, does not satisfy pervasive behavior needed to satisfy the hostile work environment legal standard. See Douglas-Slade v. LaHood,

793 F. Supp. 2d 82, 101 (D.D.C. 2011) ("Isolated incidents do not form a hostile work environment claim."). Moreover, the comments attributed to Dr. Vance were not physically threatening or humiliating, and there was no evidence that Dr. Vance's actions interfered with Plaintiff's work performance.[3] And where there was no physical assault or contact alleged, it is difficult to conclude Dr. Vance's act of pointing a finger in Plaintiff's face (if true) satisfies the test for a hostile work environment. Even if the Court believes Dr. Vance yelled and pointed at Plaintiff during their May 7, 2012 meeting, and finds the behavior inappropriate, it was not "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21. Moreover, Plaintiff cannot demonstrate the alleged encounter occurred because of his race, gender, or prior protected activity. This allegation does not support a hostile work environment claim.

***Plaintiff's August 2, 2012 Encounter with Ms. Davis***

Once again, Plaintiff complains of behavior that fails to meet the standards for a hostile work environment. Plaintiff did not believe Ms. Davis, then a GS-13 employee and junior to him in rank, should have been placed in charge of him during Ms. Burroughs' absence on August 2, 2012. Fact ¶ 43. Plaintiff further disagreed with Ms. Davis' questioning of his whereabouts on that day and allegedly cursing and pointing at him during their encounter that day. Fact ¶ 39

General hostility between employees and supervisors or between co-workers does not violate Title VII unless the Plaintiff can prove that the hostility is based on a protected class and is severe or pervasive. Although he disagreed with Ms. Davis' authority and alleges she swore and pointed at him on August 2, 2012, such action cannot be deemed physically threatening or

---

[3] Plaintiff accompanied Dr. Vance to other meetings following their alleged encounter on May 7, 2012. Fact ¶ 28

humiliating or supportive of a hostile work environment claim.[4]  Further, he does not allege that

Ms. Davis swore, yelled, and pointed at him on other occasions besides August 2, 2012.

Consequently, Plaintiff's account to Ms. Davis' behavior that day, if presumed true, cannot be

deemed severe or pervasive. Id. See  Stewart  v. Evans, 275 F.3D 1126, 1133 (D.C. Cir. 2002)

("Title VII is not a general civility code for the American workplace, nor does it serve as a

remedy for all instances of verbal or physical harassment, for it does not purge the workplace of

vulgarity.") (internal citations and quotations omitted). Because the record does not show Ms.

Davis' comments and actions were in response to Plaintiff's gender, race, or prior EEO activity,

there is no basis for finding the August 2, 2012 encounter supportive of a hostile work

environment claim.

***Work-related Disputes with Ms. Burroughs***

Plaintiff's hostile work environment allegations include claims regarding: the

reorganization of VALU operations in 2012; Ms. Burroughs' response to Plaintiff's request for

compensatory time for the period August 30, 2012 through September 24, 2012; her criticism of

Plaintiff's work performance on or about September 4, 2012; her decision to investigate the

August 2, 2012 incident involving Ms. Davis and issuance of a reprimand; and her practice of

copying Ms. Davis on emails concerning him.

Here, Plaintiff describes and relies upon the types of work-related decisions and disputes

that are not actionable as a hostile work environment claim.  The actions attributed to Ms.

Burroughs are the types of personnel decisions employers routinely make.  It is not shown that

---

[4] Ms. Davis, who was appointed Acting Director for Policy and Resource Management, indicated she looked for Plaintiff because she knew he was not feeling well.  Fact ¶ 38.  Such monitoring does not support a hostile work environment claim because "it is part of the employer's job to ensure that employees are safely and properly carrying out their jobs."  Runkle v. Gonzales, 391 F. Supp. 2d 210, 226 (D.D.C. 2005) (quoting Hussain v. Principi, 344 F. Supp. 2d 86, 104-105 (D.D.C. 2004).

any of the actions or decisions attributed to Ms. Burroughs involved abusive language or physical threats, or are atypical of the workplace dynamic between employees and their supervisors and managers.  See Singh v. U.S. House of Representatives, 300 F. Supp. 2d 48, 56 (D.D.C. 2004) (supervisor's criticism of plaintiff's work and manner of addressing her as well as nature of work assignments and opportunities afforded to Plaintiff were not severe or pervasive and instead were the "kinds of normal strains that can occur in any office setting").  Certainly, these incidents, if true, involved ordinary daily workplace decisions that are not sufficient to establish a hostile work environment.[5]

***Plaintiff's Leave Issues***

Finally, Plaintiff alleges he was subjected to a hostile work environment when: he was denied sick leave on different occasions between the months of June and September 2012; Ms. Burroughs notified him on November 26, 2012 of his failure to properly request leave; and he was required to return to work on November 29, 2012 to enter his leave.  Again, these allegations do not rise to the level of severe or pervasive treatment to support a hostile work environment claim.

_____

[5] See Brooks v. Grundman, 851 F. Supp. 2d 1, 6-7 (D.D.C. 2012) (holding that no reasonable jury could find a hostile work environment where supervisor gave Plaintiff negative performance appraisals, criticized her, increased scrutiny of her work, raised his voice during meetings, slammed his hand on the table, angrily threw a notebook in her direction, and placed her in a "Team of One," which isolated her from her coworkers); Nurriddin v. Bolden, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (finding insufficient to state a hostile work environment claim Plaintiff's allegations that "management passed him over for performance awards, lowered his performance evaluations, unfairly reprimanded and criticized him, made disparaging remarks about his EEO complaints, closely scrutinized his work, . . .and otherwise failed to provide support for his work with staffing and funding."); Bell v. Gonzales, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) (granting summary judgment to Defendants where Defendants "allegedly treated Plaintiff as a 'problem personality,' blamed him for workplace conflict, monitored his behavior more closely than that of other employees, excluded him from the informal chain of command and staff meetings, restricted his travel and teaching assignments, . . .reprimanded and criticized him, . . . spoke to him in derogatory terms (e.g., referring to Plaintiff as having "emotional problems" and calling him an "idiot") . . . and reassign[ed] Plaintiff").

22

Although Plaintiff alleges Ms. Burroughs repeatedly denied his leave requests, he took leave when he desired.  Further, Ms. Burroughs did not preclude Plaintiff from using leave that was available to him. See Fact ¶ 46 The allegations regarding any denial of leave simply do not meet the hostile work environment standard of severe and pervasive behavior, nor do the allegations suggest any adverse personnel action taken against Plaintiff.  See Graham v. Holder, 657 F. Supp. 2d 210 (2009) (Defendant's delay in responding to Plaintiff's leave request "does not constitute action sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment").  Plaintiff may not have been pleased to receive questions or instructions regarding his leave requests, but his allegations do not show these events "constituted a pervasive pattern of abuse."  Id. Rather than hostile or discriminatory, the incidents reflect Ms. Burroughs' and other personnel carrying out their responsibilities, with no consideration given to Plaintiff's race, gender, or prior protected activities.  Clearly, this is not the type of conduct that forms the basis of a hostile work environment claim.  See Cromwell v. Wash. Metro. Area Transit Auth., No. 97-2257 (RMC), 2006 U.S. Dist. LEXIS 62796, 2006 WL 2568009, AT *6 (D.D.C. Sept. 5, 2006) (plaintiff's claim that her employer delayed or denied her leave request did not support an inference of discrimination).

***Disability Claims***

There is no support for any assertion that he was subjected to a hostile work environment because of disability. As argued supra, Plaintiff cannot demonstrate his employer took any negative action against him or otherwise discriminated or retaliated against him because of his disability status. It is indisputable that Plaintiff did not request an accommodation during the time period covered by this complaint. See Fact ¶ 51 and Fact ¶ 52. Under these circumstances, a reasonable accommodation complaint, under any theory, cannot survive.

## <u>CONCLUSION</u>

Based on all the foregoing Plaintiff's disability claims should be dismissed or

alternatively, summary judgment should be entered on all claims.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar No. 415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division

By:     /s/   *Wyneva Johnson*
WYNEVA JOHNSON, D.C. Bar No. 278515
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2518
Wyneva.johnson@usdoj.gov

*Of Counsel:*
Darryl Joe
Attorney
Office of General Counsel
Department of Veterans Affairs