**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|   |   |
|---|---|
| ORLANDO JONES, | ) |
|  | ) |
|  | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) Case No. 15-1384 (CRC) |
| v. | ) |
|  | ) |
| DAVID J. SHULKIN, M.D., | ) |
| Secretary, | ) |
| DEPARTMENT OF VETERANS AFFAIRS, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

_____  )

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**Introduction**

Defendant has argued in *Defendant's Motion to Dismiss and, in the Alternative, for Summary Judgment* ("*Defendant's Motion*")) that the Court should enter an order of dismissal because Plaintiff did not exhaust his administrative remedies with respect to any disability discrimination claims. Defendant further argued that the Court should grant summary judgment in its favor because there is no evidence to support Plaintiff's claims that he suffered discrimination or retaliation. Defendant also demonstrated that Plaintiff's assertions did not show he was harassed because of his race, gender, disability status, or prior participation in the EEO process. Additionally, Defendant established that Plaintiff's claims did not rise to the level of a hostile work environment.

In *Plaintiff's Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment* ("*Opposition*"), Plaintiff raises new claims raised for the first time in his

complaint[1], mischaracterizes facts and testimony, and misstates the law.  Apparently, Plaintiff

does this in an effort to defeat summary judgment. While Plaintiff's *Opposition* also purports to

demonstrate genuine issues of material fact exist to preclude summary judgment on his

discrimination, retaliation, and hostile work environment claims, Plaintiff simply fails to present

any evidence from which the Court or a jury could conclude he has satisfied his burden.  Plaintiff

cannot demonstrate he administratively exhausted his disability claims.  Plaintiff cannot show

that the Defendant subjected him to a hostile work environment because of his protected

characteristics.  Plaintiff can adduce no evidence to prove he was the victim of unlawful

discrimination and retaliation.  Moreover, Plaintiff's factual assertions as set forth in his

*Opposition* reveal no genuine factual disputes. Because Plaintiff cannot meet his evidentiary

burdens with respect to any of his claims, the Court should grant summary judgment in the

Defendant's favor.

## Argument

**I.     Plaintiff has Presented New Causes of Action and Mischaracterized Evidence, Testimony, and Statutory Provisions.**

Apparently in an effort to defeat summary judgment by suggesting the existence of

adverse employment actions or creating disputes regarding material facts, Plaintiff has presented

new causes of action, mischaracterized evidence and testimony, and suggested the Court rely on

statutory provisions that do not stand for the propositions Plaintiff espouses.

In his *Opposition*, Plaintiff observes that the Defendant did not address an allegation that

Christopher Burroughs, Plaintiff's former supervisor, "was hired in violation of fair hiring

practices."  *Opposition* at 34.  Plaintiff, however, fails to note that his judicial complaint in the

---

[1] For example, there is no allegation in Plaintiff's Complaint in any way suggests Ms. Burroughs "was in violation of fair hiring practices.")

instant action does not address any claim alleging that Defendant illegally hired Ms. Burroughs. The Court should ignore this apparent attempt to create a claim for the purpose of defeating summary judgment.

Plaintiff appears to create an additional new claim regarding continued discrimination following his departure from the Department of Veterans Affairs (VA) Learning University to the VA's National Cemetery Administration.  Again, this is not a claim set forth in his judicial complaint.  Moreover, other than his self-serving declaration, Plaintiff provides no evidence to support his allegation regarding the National Cemetery Administration.  He also mischaracterizes the events that led Ms. Burroughs to contact his supervisor in the National Cemetery Administration.  Ms. Burroughs actually contacted Plaintiff's new supervisor in the National Cemetery Administration following Dr. Reginald Vance's encounter with Plaintiff on an elevator, during which Plaintiff cursed at Dr. Vance.   See Defendant's Reply Exhibit 2, Deposition of Christopher Burroughs, dated February 21, 2017, 24:24-25; 25:1-25; 26:1-25; 27:1-7; Defendant's Reply Exhibit 4, Deposition of Reginald Vance, dated February 21, 2017, 55: 1-15..

Plaintiff also  mischaracterizes testimony and evidence,  apparently for the purposes of discrediting Defendant's witnesses and creating factual disputes, which should be rejected by the Court. For example, Plaintiff cites to 5 U.S.C. ¶ 5104 (13)-(14) to support his belief that Ms. Burroughs was legally prohibited from assigning Zelda Davis or anyone with a lower General Schedule rating from leading Plaintiff's team during Ms.  Burroughs' absence.  See Opposition at 10-11.  However, the cite to 5 U.S.C. ¶ 5104 (13)-(14) does not refer to any prohibition against a lower ranking General Schedule employee directing a higher ranked General Schedule employee. See Defendant's Reply Exhibit 1.  Plaintiff also mischaracterized his own testimony

regarding the issue of placing a lower ranked General Schedule employee over a higher ranked

General Schedule employee.  See *Opposition* at 11.  Plaintiff's current assertion directly

contradicts Plaintiff's testimony during the investigation. In his Opposition, Plaintiff recalled a

discussion with Ms.  Burroughs during which Ms. Burroughs reportedly acknowledged that

lower graded employees are not to be placed over higher graded employees.  Id.  However,

during the Agency's investigation Plaintiff told the investigator that Ms. Burroughs

acknowledged that when she was in the military, she would not have placed a Sergeant First

Class  in charge of a Sergeant Major. Defendant's Reply Exhibit 5, 46:19-23; 47:1-9.   Clearly,

Ms. Burroughs' acknowledgment, to the extent it occurred, had nothing to do with Agency

employees, as Plaintiff now suggests.  Her alleged comment pertained to military personnel, not

civil service, General Schedule employees.

## II.    Plaintiff Failed to Exhaust His Rehabilitation Act Claims

It is well settled that a federal employee who brings Rehabilitation Act claims must

"initiate his . . . complaint with the agency."  Kizas v. Webster, 707 F.2d 524, 544 (D.C. Cir.

1983).  Failing to exhaust administrative remedies for Rehabilitation Act claims is a

jurisdictional defect.  See  Mahoney v. Donovan, 824 F. Supp. 2d 49, 58 (D.D.C. 2011).

Because exhaustion is a jurisdictional requirement, the plaintiff bears the burden to prove that he

has exhausted his Rehabilitation Act claim.  Id.

Assertions in his *Opposition* notwithstanding, Plaintiff has not exhausted his

administrative remedies as to his Rehabilitation Act claims.  Plaintiff does not dispute that his

formal EEO complaints made no mention of any disability discrimination claims based either on

discrete acts, retaliation, or a hostile work environment.  See Opposition at 44 ("The fact that the

formal EEO complaint did not include [the disability] claim should not bar Mr. Jones from

pursuing those claims.")  Instead, he asserts his disability claims were either "reasonably related" to his claims regarding denial of sick leave, or were raised during the processing of his discrimination complaint so as to place the Agency on notice that he was pursuing such claims. Id.  Defendant disagrees.  First, it is beyond reasonable dispute that Plaintiff's formal complaints do not include any references to disability claims.  See *Defendant's Statement of Material Facts as to which there is No Genuine Dispute* ("*Defendant's Statement of Material Facts*") at 3, 4-7. Because Plaintiff did not raise disability claims in his formal complaints, his race, gender, and retaliation claims cannot serve to exhaust any disability-related claims.  Cf. Bowe-Connor v. Shinseki, 923 F. Supp. 2d 1, 7 (D.D.C. 2013) (dismissing claim of national origin discrimination for failure to exhaust where EEO charge alleged only age and gender discrimination); Nyunt v. Tomlinson, 543 F. Supp. 2d 25, 35 (D.D.C. 2008) (dismissing race discrimination claim for failure to exhaust where EEO charge alleged only national origin discrimination).

Further, Plaintiff may not rely on the fact that he informally referred to a disability discrimination claim before filing his formal complaint when he sought EEO counseling.  His informal communication, standing alone, is insufficient for exhaustion purposes.  See Hamilton v. Geithner, 666 F.3d 1344, 1350 (D.C. Cir. 2012) ("Filing a formal complaint is a prerequisite to exhaustion. . ., so [plaintiff] cannot rely on the EEO counseling report to establish exhaustion of a claim that he failed to include in his formal complaint.").  Consequently, the Court should dismiss Plaintiff's disability claims.

**III.     Plaintiff Can Present No Evidence of Adverse Employment Action to Support Any Disparate Treatment or Retaliation Claims.**

Plaintiff continues to assert he experienced discrimination and retaliation based on his race, gender, and disability status.  See *Opposition* at 30-40.  Defendant has explained its legitimate and non-discriminatory reasons for actions that actually occurred.  See *Defendant's*

*Statement of Material Facts at Fact* ¶¶ 19-25; 28; 30-32; 36-38; 55-56; 61-65; see also

Defendant's Memorandum at 13-16.  Plaintiff can present no evidence to show the legitimate

and non-discriminatory reasons proffered by the Agency are pretext designed to mask unlawful

discrimination or retaliation.  See Nurriddin v. Bolden, 40 F. Supp. 3d 104, 136 (D.C. Cir. 2012)

(Court observes that if the plaintiff is unable to adduce evidence that could allow a reasonable

trier of fact to conclude that the defendant's proffered reason was a pretext for discrimination,

summary judgment must be entered against the plaintiff).  Additionally, Plaintiff cannot

demonstrate he experienced any adverse employment consequences by any actions of the

Agency.

      The antidiscrimination and  antiretaliation  provisions of Title VII make it unlawful for an

employer to discriminate or retaliate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race or other

protected characteristics. See  Steele v. Schafer, 535 F. 3d 689, 695 (D.C. Cir. 2008), quoting 42

U.S.C. § 2000e-2(a).  To state a claim of disparate treatment under Title VII's antidiscrimination

provision, the plaintiff must establish two elements: (1) he suffered an adverse employment

action and (2) the adverse employment action was due to the plaintiff's race, color, religion, sex,

national origin, age, or disability.  See Peters v. District of Columbia, 873 F. Supp. 2d 158, 189

(D.D.C. 2012).  To prevent a claim of unlawful retaliation under Title XII, an employee must

show he "engaged in protected activity, as a consequence of which [his] employer took a

materially adverse action against [WM]." Weber v. Battista, 494 F. 3d 179 (D.C. Cir. 2007).

      The D.C. Circuit defines adverse employment action as "a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing significant change in benefits."  Aliotta v. Bair,

576 F. Supp. 2d 113, 120 (D.D.C. 2008) (quoting Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003).  Courts have consistently excluded "[p]urely subjective injuries, such as dissatisfaction with reassignment, public humiliation, or loss of reputation." Nichols v. Truscott, 424 F. Supp. 2d 124, 136 (D.D.C. 2006) (quoting Holcomb v. Powell, 433 F.3d 889, 902 (D.C. Cir. 2006).

### A.  Remarks by Alice Muellerweiss, Reginald Vance, Arthur McMahan, and Zelda Davis

Plaintiff continues to assert that Ms. Muellerweiss, Drs. Vance and McMahan, and Ms. Davis discriminated against him because of his race, gender, disability status and in retaliation for prior EEO activity when they embarrassed and intimidated him with their spoken words. Plaintiff specifically asserts that Dr. Vance and Ms. Davis, waved their fingers in his face.  See Opposition at 5-7, 10-12.  Such acts, even if presumed true, do not resemble the ultimate employment decisions typically deemed adverse. Munro v. LaHood, 839 F. Supp. 2d 354, 362, (D.D.C. 2012) ("Sporadic verbal altercations or disagreements do not qualify as adverse actions.") quoting Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008).  Consequently, Plaintiff has made no showing that any conduct by Ms. Muellerweiss, Drs. Vance and McMahan, and Ms. Davis negatively affected the terms or conditions of his employment. Id.

### B.  Allegations Regarding Leave and Compensatory Time

Plaintiff continues to assert that Defendant discriminated and retaliated against him because of his protected characteristics.  See Opposition at 37-40.   He further contends that the Agency's actions "amounted to adverse employment actions."  Id. at 38 Plaintiff is simply incorrect.

Plaintiff can present no evidence to show he did not take leave when he requested it.  See Defendant's Statement of Facts, Fact ¶¶ 61-62.  Similarly, he cannot show the Agency did not

ultimately resolve Plaintiff's compensatory time issues.  See *Defendant's Statement of Facts*, Fact ¶ 56.  Diggs v. Potter, 700 F. Supp. 2d 20, 44 (D.D.C. 2010) (Court acknowledges that "[i]t is well settled in this Circuit that absent some consequential harm or injury, a delay does not affect the terms, conditions or privileges of employment and does not constitute an adverse employment action.").  Clearly, Plaintiff cannot demonstrate any harm, including financial harm, from any denial of leave or compensatory time.  See Morales v. Gotbaum, 42 F. Supp. 3d 175, 207 (D.D.C. 2014) (Court observes that the plaintiff did not suggest he experienced a financial harm from the denial of his leave request, which weakened his assertion that the denial was an adverse action).  Because Plaintiff can produce no evidence he experienced a financial harm due to Defendant's processing of his leave requests and request for compensatory time, Plaintiff did not experience any adverse employment action regarding those matters.

### C.  Removal of Team Members

Plaintiff contends that the removal of team members increased his workload, making his job more difficult, and ultimately jeopardized his position in the office.  See *Opposition* at 33-34. Plaintiff has not demonstrated, however, that the Agency's decision to reassign certain VA Learning University employees during a reorganization in any way affected Plaintiff's pay, grade, benefits, or opportunities for advancement.  Even if Plaintiff's responsibilities were somehow reduced, "the removal of responsibilities does not alone constitute an adverse action," when, as was the case here, the employee maintains the same pay and grade level.  See Martin v. Locke, 659 F. Supp. 2d 140, 149 (D.D.C. 2009).  Furthermore, the intangible harms of loss of prestige and dissatisfaction with a work assignment simply do not rise to the level of adverse employment actions.  See Forkkio v. Powell, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002) (neither a reassignment depriving plaintiff of prestige nor a supervisor's alleged undermining of plaintiff's

Case 1:15-cv-01384-TJK   Document 29   Filed 06/22/17   Page 9 of 11

authority rises to the level of an adverse employment action where there is no negative impact to the plaintiff's pay, benefits remain unchanged, and there is no significant change in job responsibilities).

### D.  Other Work-Related Disputes with Ms. Burroughs

Although Plaintiff cites other work-related disputes with Ms. Burroughs, such as the issuance of a reprimand, criticism of his work and issuance of a performance rating Plaintiff believes he did not deserve, and Ms. Burroughs's practice of copying Ms. Davis on emails regarding Plaintiff, none of these incidents rise to the level of an adverse employment action. Plaintiff can adduce no evidence to show the reprimand and performance evaluation Ms. Burroughs issued to him impacted his pay, grade, benefits, responsibilities, or opportunities for advancement within the Agency.  See Jones v. Bush, 160 F. Supp. 3d 325, 317 (D.D.C. 2016); Baloch, 550 F.3d at 1199 (Court observed that letter of counseling, letter of reprimand and unsatisfactory performance rating were not adverse employment actions).  Likewise, Plaintiff can present no evidence to show Ms. Burroughs decision to copy Ms. Davis on emails concerning Plaintiff in any way constituted adverse actions.  See Baird v. Gotbaum, 662 F.3d 1246, 1248  (D.C. Cir. 2011) (describing an adverse employment action as a significant change in employment status).  Copying Ms. Davis on the emails regarding Plaintiff's leave in question caused no significant, tangible harm.  Neither this allegation nor any of Plaintiff's discrimination and retaliation claims show Plaintiff suffered an adverse employment action.  See Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (even though a plaintiff may not be required to establish a prima facie case to survive a motion for summary judgment, the plaintiff must show he suffered an adverse employment action).

### IV.    Plaintiff Still Has Neither Presented Evidence, nor Can He, to Demonstrate the Existence of a Hostile Work Environment.

Defendant explained in its *Memorandum* the matters of which Plaintiff complains do not rise to the level of a hostile work environment. *Defendant's Memorandum* at 16-23.  The U.S Supreme Court has made it clear "that conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher v. Boca Raton, 524 U.S. 775, 788 (1998). Conduct that is "merely offensive" is insufficient to support a hostile work environment claim. Harris v. Forklift Systems., Inc., 510 U.S. 17, 21 (1993).

The employment issues of which Plaintiff complains were not harassment.  Rather the issues largely reflect innocuous remarks, as well as his employer's efforts at directing work that needed to be done in the office, maintaining workplace order, and addressing conduct and performance issues, when necessary.  For example, Plaintiff may assert that the alleged remarks made by Ms. Muellerweiss, Dr. Vance, Dr. McMahan, Ms. Zelda Davis, and Ms. Christopher Burroughs, were all outside of the context of normal workplace interactions.  However, even accepting Plaintiff's allegations as true, the alleged comments were either inoffensive or relatively isolated instances of non-severe misconduct that cannot support a claim of hostile work environment.

Indeed, the folly of Plaintiff's hostile work environment claims is no better evidenced by his relationship with Alice Muellerweiss, former Dean of VA's Learning University.  Although Plaintiff complains of an embarrassing incident where Ms. Muellerweiss reportedly ridiculed him in front of a crowd of his peers and other supervisors, Ms. Muellerweiss recalls a different type of encounter with Plaintiff in 2015, several years following the alleged discriminatory incidents for which Plaintiff now seeks damages.  Defendant's Reply Exhibit 3, Deposition of Alice Muellerweiss, dated February 16, 2017, 34:3-17.  As Ms. Muellerweiss recalls, Plaintiff approached her at a business conference in Pittsburgh, Pennsylvania, requesting an opportunity

to engage in business with her.  Id.   Plaintiff's reaction to Ms. Muellerweiss during that chance meeting in 2015 was not the reaction of someone who truly believed Ms. Muellerweiss discriminated and retaliated against him and subjected him to a hostile work environment. Plaintiff cannot show that the incidents he describes in his complaint are other than the kind of commonplace conflicts that exist in work places.    Plaintiff was not harassed, ridiculed, or insulted because of any protected category and certainly not to the extent that the Defendant subjected him to an abusive working environment. Plaintiff's hostile work environment claim fails because he cannot show his work environment was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [his] employment. . . ." Harris v. Forklift Systems, Inc., 510 U.S. at 21.  Plaintiff's claims fall short of meeting this standard.  Accordingly, the Defendant is entitled to summary judgment in its favor.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar No. 415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division

By: _____
WYNEVA JOHNSON, D.C. Bar No. 278515
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2518
Wyneva.johnson@usdoj.gov

Of Counsel:
Darryl Joe
Attorney
Office of General Counsel
Department of Veterans Affairs